IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re Testosterone Replacement Therapy Products Liability Litigation Coordinated Pretrial Proceedings | ) ) ) ) | No. 14 C 1748 MDL No. 2545 |
| ALVIN LIGGINS, CHARLIE BERNAIX, JOHN GOLDMAN, BRIAN ROBERTS, JAMES PULLIAM, SAMUEL SNYDER, FRANK SPANGLER, ANGEL VEGA, AARON RUNFALO, and MICHALE BIONISIO, Plaintiffs, v. ABBVIE INC. and ABBOTT LABORATORIES, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 15 C 11058 |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Defendants AbbVie Inc. and Abbott Laboratories are pharmaceutical companies incorporated in Delaware, with their principal places of business in Illinois.[1] Plaintiffs are ten unrelated individuals from nine different states (Missouri, Illinois, New Jersey, Connecticut, Mississippi, Florida, West Virginia, Indiana, and New York) who jointly sued defendants in state court in Missouri, alleging that they suffered personal injuries caused by defendants' testosterone replacement therapy (TRT) drug AndroGel. Defendants

---

[1] In their complaint, plaintiffs state that Abbott Laboratories is an Illinois corporation, but in the memorandum in support of their motion to remand, they accept defendants' assertion that both defendants are Delaware corporations. For purposes of deciding the motions before the Court, it makes no difference whether Abbott Laboratories is incorporated in Illinois or in Delaware.

1

removed the case to the United States District Court for the Eastern District of Missouri based on diversity of citizenship. Once in federal court, defendants filed a motion to stay proceedings pending the likely transfer of the case to this multidistrict litigation (MDL) proceeding, as well as a motion to dismiss for lack of personal jurisdiction and failure to state a claim. Plaintiffs filed a motion to remand the case to state court, contending that the federal court lacked subject matter jurisdiction because of a lack of complete diversity of citizenship. After the parties' motions were fully briefed but prior to any rulings, the Judicial Panel for Multidistrict Litigation (JPML) transferred the case to this Court, pursuant to 28 U.S.C. § 1407, for inclusion in the MDL proceeding.

For the reasons discussed below, the Court grants defendants' motion to dismiss for lack of personal jurisdiction with respect to the claims asserted by Illinois plaintiff Charlie Bernaix. Having thereby preserved diversity of citizenship, the Court denies plaintiffs' motion to remand. In addition, the Court declines to rule at this time on defendants' motion to dismiss the remaining plaintiffs' claims, and because the case has already been transferred, defendants' motion to stay pending transfer is moot.

**Background**

Like others whose cases have been consolidated in this MDL proceeding, plaintiffs allege that they have suffered cardiovascular, thromboembolic (blood clotting), or cerebrovascular injuries caused by their use of defendants' TRT drug AndroGel. The United States Food and Drug Administration (FDA) has approved AndroGel for the treatment of hypogonadism, a condition in which a male produces no or very low testosterone in conjunction with an associated medical condition. Plaintiffs allege, however, that AndroGel is unreasonably dangerous and defectively designed, and that

2

defendants falsely marketed AndroGel to physicians and consumers as a safe and effective treatment for conditions other than hypogonadism. According to plaintiffs, defendants marketed and sold AndroGel throughout the United States, including in the state of Missouri, where they maintain a registered agent and are licensed to do business.

According to the allegations in the complaint, only one plaintiff suffered injury in connection with defendants' activities in Missouri. Plaintiffs allege that plaintiff Alvin Liggins, a Missouri citizen, used AndroGel in St. Louis and suffered a deep vein thrombosis there as a result. The nine other plaintiffs are citizens of other states who suffered injuries in other states, and the locations where they used AndroGel were either in other states or are unspecified in the complaint. Plaintiffs do not identify the locations where they or their doctors viewed any advertisements or marketing material for AndroGel. Charlie Bernaix, the sole Illinois plaintiff, applied AndroGel while in Illinois and suffered a deep vein thrombosis and pulmonary embolism while in Illinois.

As indicated earlier, after plaintiffs filed their case in Missouri state court, defendants removed the case to the United States District Court for the Eastern District of Missouri. It was then transferred to this Court and consolidated with the MDL proceeding. Though defendants removed the case to federal court on the basis of diversity of citizenship, plaintiffs deny that diversity exists and have moved to remand the case to state court on the ground that a federal court lacks subject matter jurisdiction.

## Discussion

For a federal court to have subject matter jurisdiction in a case premised on diversity of citizenship, there generally must be complete diversity between the parties;

3

that is, no plaintiff may be a citizen of the same state as any defendant. *See Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806). Because both defendants and one of the plaintiffs are citizens of Illinois, plaintiffs argue that complete diversity is lacking. Thus, according to plaintiffs, defendants' removal to federal court was improper, and the Court should remand the case. Defendants, on the other hand, maintain that the case falls under an exception to the complete diversity requirement. They argue that a Missouri court cannot exercise personal jurisdiction over defendants with respect to the claims brought by the non-diverse Illinois plaintiff, Bernaix. Thus, they contend, because "there is no reasonable basis for the imposition of liability under [Missouri] law," the doctrine of "fraudulent joinder" allows the court to assume jurisdiction temporarily and "dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims." *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012). In the alternative, defendants argue that the Court may exercise its discretion to address the personal jurisdiction question first before reaching the question of subject matter jurisdiction.

Plaintiffs make three arguments in response. First, they argue that the lack of complete diversity makes the subject matter jurisdiction issue simple and that the Court should address that issue first and remand the case prior to deciding the issue of personal jurisdiction. Second, they argue that the fraudulent joinder doctrine, which involves an assessment of the substantive merits of the claims involving the non-diverse parties, is not applicable because personal jurisdiction is a non-merits issue. Third, they argue that defendants' contacts with the state of Missouri provide a reasonable basis for a Missouri court to exercise personal jurisdiction over them for the entire case. After

discussing the appropriate source of federal law to apply in this case, the Court turns to the parties' jurisdictional arguments.

**A.    Applicable law**

For cases transferred by the JPML to an MDL proceeding, the transferee court applies the law of the circuit in which it sits to decide issues of federal procedure like those presently before the Court. *See In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 256 F. Supp. 2d 884, 888 (S.D. Ind. 2003); *cf. McMasters v. United States*, 260 F.3d 814, 819 (7th Cir. 2001) ("Only where the law of the United States is specifically intended to be geographically non-uniform should the transferee court apply the circuit precedent of the transferor court."). The parties submitted their briefs on these motions while the case was still pending in the Eastern District of Missouri, and thus the parties' arguments assume that the Eighth Circuit supplies the governing federal law. But the parties do not cite any Eighth Circuit decision that would control the outcome in this case, and as discussed below, the Court does not believe that any Seventh Circuit opinion is controlling either. In addition, the parties have made no request to amend or supplement their briefing. Thus the fact that the parties did not file their briefs directly in this Court poses no significant problem.

Parties asserting federal subject matter jurisdiction—defendants, in this case—bear the burden of establishing that jurisdiction exists. *Farnik v. FDIC*, 707 F.3d 717, 721 (7th Cir. 2013). In determining whether removing defendants have met their burden to establish subject matter jurisdiction, courts accept as true the allegations in the complaint and draw all reasonable inferences in the plaintiffs' favor. *See Denton v. Universal Am-Can, Ltd.*, No. 12 C 3150, 2012 WL 3779315, at *1 (N.D. Ill. Aug. 30,

2012). In an MDL proceeding, the MDL transferee court has jurisdiction over cases transferred under 28 U.S.C. § 1407 only if the court from which the case was transferred would have jurisdiction. *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2015 WL 5768574, at *3 (N.D. Ill. Sept. 30, 2015). If a defendant challenges a court's personal jurisdiction over it, the plaintiff bears the burden of establishing jurisdiction. *Id.* In addressing the issue of personal jurisdiction, therefore, the Court asks whether plaintiffs have carried their burden to show that a district court in the Eastern District of Missouri, the transferor court, could exercise jurisdiction over defendants.

**B.     Addressing personal jurisdiction before subject matter jurisdiction**

Responding to defendants' contention that the Court lacks personal jurisdiction over the non-Missouri plaintiffs' claims, plaintiffs urge the Court to exercise its discretion to decide the subject matter jurisdiction question first. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587-88 (1999) (stating that if subject-matter jurisdiction involves "no arduous inquiry," then "both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first"). Plaintiffs argue that the subject matter jurisdiction analysis is simple because of the clear lack of complete diversity between the parties. Thus they urge the Court to remand the case on the grounds that it lacks subject matter jurisdiction and thereby avoid grappling with the more difficult personal jurisdiction question.

Plaintiffs attempt to characterize the subject matter jurisdiction analysis as easy and straightforward by suggesting that it can be confined to a simple review of the named parties' citizenship. This oversimplifies the issue. Defendants have asserted a

plausible argument that the Court lacks personal jurisdiction over Bernaix's (and the other non-Missouri plaintiffs') claims and that his claims were fraudulently joined to destroy complete diversity. The Court cannot simply ignore or summarily reject this argument to make its subject matter jurisdiction analysis easier. And indeed, though colorable and warranting consideration, defendant's fraudulent joinder argument raises issues on which there is no controlling Seventh Circuit precedent, such as whether the fraudulent joinder doctrine applies where the alleged deficiency in the joined claim involves a non-merits issue like personal jurisdiction, and whether the doctrine applies to the joinder of plaintiffs at all. As another district court commented while addressing a similar situation, the possibility of fraudulent joinder can make the subject matter jurisdiction analysis "rather complicated," especially if the inquiry involves "the more unusual question of 'fraudulent joinder' of a plaintiff." *Foslip Pharm., Inc. v. Metabolife Int'l, Inc.*, 92 F. Supp. 2d 891, 899 (N.D. Iowa 2000) (citing *Ruhrgas AG*, 526 U.S. at 587).

The personal jurisdiction question defendants raise, on the other hand, is more straightforward and does not present a "complex question of state law."[2] Thus it would not offend principles of federalism to address that question first before addressing the more "difficult and novel" subject matter jurisdiction question. *Ruhrgas AG*, 526 U.S. at 588; *see also id.* at 587–88 ("[I]f removal is nonfrivolous and personal jurisdiction turns on federal constitutional issues, 'federal intrusion into state courts' authority . . . is minimized.'") (quoting *Asociacion Nacional de Pescadores v. Dow Quimica*, 988 F.2d

---

[2] Defendants have not argued that any feature of Missouri state law prevents the Court from exercising personal jurisdiction. They rely, instead, on the familiar federal due process constraints that they believe restrict the Court's exercise of personal jurisdiction over them.

7

559, 566–67 (5th Cir. 1993)).

In addition, as defendants note, their subject matter jurisdiction argument depends upon their contention that the Court lacks personal jurisdiction.  Thus unless the Court were to conclude at the outset that the fraudulent joinder inquiry has no application in this case, the Court will necessarily confront the personal jurisdiction question regardless of the sequence in which it conducts the analysis.  At a minimum, therefore, it is within the Court's discretion to analyze the personal jurisdiction question first, as the Supreme Court has recognized, *see id.*, and as plaintiffs concede, *see* Pl.'s Mem. in Supp. of Mot. to Remand 5.  *See also Evans v. Johnson & Johnson*, No. CIV.A. H-14-2800, 2014 WL 7342404, at *3 (S.D. Tex. Dec. 23, 2014) ("[T]he most efficient course of action is to consider the motion to dismiss for lack of personal jurisdiction, which results in dismissal of the claims of all plaintiffs except the single [diverse] plaintiff [and] thereafter deny the motion to remand because no non-diverse plaintiffs remain . . . .").

To promote judicial economy, the Court will first address the issue of its personal jurisdiction over defendants as to Bernaix's claims.  If personal jurisdiction is lacking, the Court may dismiss his claims, thereby preserving diversity of citizenship without delving into the fraudulent joinder analysis.

C.     **Personal jurisdiction over defendants as to Bernaix's claims**

The parties agree that neither defendant is a citizen of Missouri.  A court may still exercise personal jurisdiction over a nonresident defendant, consistent with the Due Process Clause, by asserting general or specific jurisdiction over the defendant based on its having certain "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*

8

*Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). An assertion of general jurisdiction over a nonresident defendant allows a court to hear all claims against that defendant but requires its contacts to be "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). In contrast to general jurisdiction, a court may assert specific jurisdiction over a foreign defendant in a particular case even in a state where the defendant is not "essentially at home," as long as the defendant's "suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). *See also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (describing specific jurisdiction situation as one in which the "controversy is related to or arises out of a defendant's contacts with the forum").

Plaintiffs do not contend that defendants' sales and marketing activities within Missouri were sufficiently continuous and systematic to allow Missouri courts to exercise general jurisdiction over them. And defendants do not dispute that their marketing and sale of AndroGel that gave rise to the Missouri plaintiff's claim creates a substantial connection with Missouri, such that a Missouri court would have specific jurisdiction over defendants for that plaintiff's claims. Thus the parties' personal jurisdiction dispute boils down to a single question: whether the existence of specific jurisdiction over a defendant for one plaintiff's claims allows a court to exercise jurisdiction over that same defendant as to the other, unrelated plaintiffs' claims.

The Court has not found any Seventh Circuit case that squarely addresses this question. The Court concludes, however, based on the rationale underlying the

"minimum contacts" requirement as well as sensitivity to "traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316, that the specific personal jurisdiction inquiry in this case must be conducted separately for the claims of each individual plaintiff. Thus every plaintiff would thus have to show that his claims arise from, or are related to, defendants' conduct in Missouri. Plaintiffs have made no such showing with respect to Bernaix's claims. They do not allege that he or his physician encountered any advertisements for AndroGel in Missouri, that he purchased or used AndroGel in Missouri, or that he suffered an injury in Missouri. Rather, his claims are based entirely on defendants' conduct in, and contacts with, Illinois. Thus a Missouri court would have no reasonable basis to exercise specific jurisdiction over defendants for his claims.

Plaintiffs maintain that their claims, and the Missouri contacts giving rise to them, should not be viewed in isolation. It is undisputed that a Missouri court would have jurisdiction over Liggins' claims; thus, they argue, the Missouri court would also have jurisdiction over the other plaintiffs' properly joined claims, as long as those claims arise out of the same series of transactions or occurrences. *See Gracey v. Janssen Pharm., Inc.*, No. 4:15-CV-407 CEJ, 2015 WL 2066242, at *3 (E.D. Mo. May 4, 2015). They argue that the same series of transactions or occurrences—defendants' promotion, marketing, and sale of AndroGel—gave rise to all plaintiffs' claims and took place, in part, in Missouri, such that the court may "properly exercise personal jurisdiction over defendants with respect to this cause of action as a whole." *Id. See also Bradshaw v. Mentor Worldwide, LLC*, No. 4:15-CV-332 SNLJ, 2015 WL 3545192, at *2 (E.D. Mo. June 4, 2015) (declining to dismiss out-of-state plaintiffs' claims against medical device manufacturer for lack of personal jurisdiction where all claims arose "from the same or

10

substantially related acts, which happened to take place in Missouri and in other states, but which squarely subject[ed] [the defendant] to personal jurisdiction in Missouri").

According to plaintiffs, as well as the district courts in *Gracey* and *Bradshaw* upon whom they rely, it is improper to analyze the connection between a defendant's contacts within the forum state and the claims asserted on a plaintiff-by-plaintiff basis. Doing so, they suggest, ignores the Supreme Court's instruction that a court's minimum contacts analysis "properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). See also *Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014) ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").

Nothing in the Supreme Court decisions plaintiffs cite, however, suggests that a court may exercise jurisdiction over a plaintiff's claims against a defendant where those claims are unrelated to the defendants' activities within the forum state. In *Keeton*, for example, the Court ruled that a New Hampshire court could exercise jurisdiction over a defendant magazine publisher based on the publisher's circulation of magazines containing allegedly libelous content within New Hampshire. Though the plaintiff herself had only limited contacts with New Hampshire, she had brought suit, in part, for damages she suffered there, and the Court reasoned that in addition to protecting its own citizens from libelous statements, New Hampshire had an interest in protecting nonresident victims of libelous statements circulated within the state. *See Keeton*, 776–77. There is no indication in *Keeton* that the plaintiff could have brought suit in New Hampshire if, for example, the magazine circulated within the state contained only

11

libelous statements related to other, unrelated plaintiffs.  Similarly, nothing in *Walden* indicates that a court may exercise personal jurisdiction over a claim against defendants unrelated to their conduct within the forum state.  The Court in *Walden* emphasized the importance of considering the defendant's contacts with the forum state, as opposed to the plaintiff's, in support of the proposition that a plaintiff "cannot be the only link between the defendant and the forum."  *Walden*, 134 S. Ct. at 1122.   But the Court's opinion does not suggest that a court need only analyze the sufficiency of the defendant's contacts with the forum state in relation to one of the claims asserted in the litigation, and the Court simply does not address a situation in which a defendants' contacts with the forum are unrelated to the claims some of the plaintiffs assert.

To the extent Bernaix's claims "relate to" defendants' contacts within Missouri, they do so only in the abstract or by analogy.  Just as defendants allegedly sold and made false representations about AndroGel in Missouri, giving rise to injuries there, so too did defendants allegedly sell and make false representations about AndroGel in Illinois and other states.  But plaintiffs make no allegation of any real relationship between Bernaix's claims and defendants' Missouri contacts; all of the factual allegations necessary to establish his claims are based on defendants' conduct outside Missouri.  Their argument thus appears to be based on a kind of "pendent" or "supplemental" theory of specific personal jurisdiction, under which a court could exercise personal jurisdiction over multiple plaintiffs' claims that arise from the same transactions or occurrences and involve some common issues of law or fact as long the court properly has specific jurisdiction over one plaintiff's claims.   The Court, however, respectfully disagrees with plaintiffs, and with the district courts in *Gracey* and *Bradshaw*, that any

such doctrine exists. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 n.6 (5th Cir. 2006) ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim.") (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351, at 229 n.30 (3d ed. 2004)). Other circuit courts, in addition to the Fifth Circuit in *Seiferth*, have held that personal jurisdiction over the defendant must be established as to each claim asserted. *See, e.g.*, *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001); *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999). Though these cases involved separate claims brought by the same plaintiff, the Court sees no reason—and plaintiffs have provided none—why the principle underlying those decisions would not also apply to claims brought by separate plaintiffs.

In addition, even if such a doctrine of pendent specific personal jurisdiction existed, it is far from clear that plaintiffs' claims—which involve different consumers in different states suffering different injuries after receiving prescriptions from different doctors for a drug used for varying time periods—arise from the same transaction or occurrence. *See, e.g.*, *Hill v. Eli Lilly & Co.*, No. 1:15-CV-00141-JMS, 2015 WL 5714647, at *7 (S.D. Ind. Sept. 29, 2015) (collecting cases and stating that "[t]he Court's view that Plaintiffs' claims do not arise from a common transaction or occurrence is in keeping with the consistent reluctance of federal courts to treat products liability claims as arising from the same transaction or occurrence merely because they relate to the same medicine or medical device.").

Under the theory plaintiffs propose, the alleged sale and promotion of AndroGel

13

within Missouri, which allegedly caused a Missouri plaintiff's injury, would subject defendants to general personal jurisdiction in Missouri for claims brought by any plaintiff who allegedly suffered injury by purchasing and using AndroGel anywhere in the country. Such a result would be plainly contrary to "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. *See, e.g.*, *Keeley v. Pfizer Inc.*, No. 4:15CV00583 ERW, 2015 WL 3999488, at *3 (E.D. Mo. July 1, 2015). In this case, such a result would be particularly at odds with the rationale underlying the requirement that a defendant have minimum contacts with the forum state. One purpose of that requirement is to "protect[] the defendant against the burdens of litigating in a distant or inconvenient forum." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 564 (1980). That purpose would be frustrated in this case if a Missouri court were to have personal jurisdiction over Bernaix's claims. As defendants note, because of the different factual circumstances surrounding the various plaintiffs' alleged purchase and use of AndroGel, as well as the variance in their alleged injuries, plaintiffs' claims are likely to be tried separately. Thus if a Missouri court asserted jurisdiction over defendants for Bernaix's claims, defendants would be haled into Missouri to defend against allegations that are unrelated to any activities they (or plaintiff) conducted within the state. As defendants point out, the Missouri juries in Bernaix's case likely would not even hear any evidence related to Missouri. It would thus be unfair and contrary to the rationale underlying the minimum contacts doctrine to allow plaintiffs to use the Missouri plaintiff's claims as a hook to reel defendants into a series of separate trials in a distant and inconvenient forum to try issues unrelated to their conduct within the forum.

For the foregoing reasons, defendants' contacts in Missouri that give rise to

Liggins' claims are inadequate to confer jurisdiction over defendants for Bernaix's claims. Because dismissal of Bernaix's claims makes the parties completely diverse, the Court retains subject matter jurisdiction and therefore denies plaintiffs' motion to remand.

### Conclusion

For the reasons discussed above, the Court dismisses the claims of plaintiff Charlie Bernaix for lack of personal jurisdiction. The Court also denies plaintiffs' motion to remand. The Court declines at this time to rule on defendants' motion to dismiss regarding the other plaintiffs' claims. The Court wishes to discuss with counsel how the case should proceed ahead. The case is set for a telephone status conference on March 1, 2016 at 12:45 p.m. Chicago time. Counsel should confer to determine who should participate in the conference call; someone should volunteer to set it up; and they are to advise the Court by February 29, 2016 regarding the call-in information.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 18, 2016